FRED L. CARTER & others *vs.* A. W. DODD.

Suffolk. January 14, 1904. — September 8, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Contract,* Construction, Performance and breach. *Sale.*

An agreement headed "Contract" was as follows: "Gloucester, Mass., June 2, 1902. Messrs. C. C. & M., Boston, Mass. We this day enter you on contract for the following: Article, Jervell's 1902 Norwegian Cod Oil. Quantity: 10 bbls. Price: $33 per bbl. F. O. B. Boston. Terms: Net 30 days, less 1% 10 days. Deliveries: To be delivered in lots as wanted prior to April 1st, 1903. D. & Co." "Accepted, C. C. & M., 6/3/02." In an action by C. C. & M. against D., doing business as D. & Co., for a refusal to deliver certain barrels of oil demanded under this contract after April 1, 1903, it was *held*, that there was nothing in the instrument, as construed in the light of the correspondence between the parties, to show clearly a sale of ten barrels of oil for future delivery rather than an agreement to sell that number of barrels if called for before April 1, 1903, and that the plaintiffs had not sustained the burden of proving a breach of contract by the defendant.

CONTRACT, against A. W. Dodd, doing business in Gloucester as A. W. Dodd and Company, for alleged breach of an agreement in writing to deliver ten barrels of Norwegian cod oil to the plaintiffs at the price of $33 a barrel, the defendant having delivered only seven barrels of the oil and having refused to deliver three others, the delivery of which was demanded after April 1, 1903. Writ dated May 11, 1903.

In the Superior Court *Gaskill,* J. ordered judgment for the defendant on an agreed statement of facts, the substance of which is stated in the opinion. The plaintiffs appealed.

*F. E. Bradbury,* for the plaintiffs.

*E. S. Taft,* for the defendant, submitted a brief.

BARKER, J.  Whether the judgment for the defendant is to be affirmed depends upon the question whether the contract of June 2, 1902, is to be construed as a contract under which the plaintiffs could take the oil only before April 1, 1903, or as an absolute agreement on the part of the defendant to deliver it before that date and on the part of the plaintiffs to take it before that date.

The contract is said by the agreed statement of facts to have been in these words:

" Contract.

" Gloucester, Mass., June 2, 1902.

" Messrs. Carter, Carter & Meigs,

Boston, Mass.

" We this day enter you on contract for the following:

" Article, Jervell's 1902 Norwegian Cod Oil.  .

Quantity : 10 bbls.

Price : $33 per bbl. F. O. B. Boston.

Terms : Net 30 days, less 1% 10 days.

Deliveries : To be delivered in lots as wanted prior to April 1st, 1903.

" A. W. Dodd & Co."

" Accepted, Carter, Carter & Meigs, 6/3/02."

The absence from this writing of words which unequivocally indicate a sale is significant.  The words " bought " or " sold " do not appear.  The general form is not that of a bill of goods sold for future delivery.  The first word " Contract " placed as a heading or catchword is as well adapted to indicate a contract to be binding only to a certain date as to an absolute sale.  So also is the next important clause, set down in the place where the essence of the contract naturally would be found.  If the intention was that the plaintiffs should at all events sell and the defendant buy, language unequivocally indicating a sale and purchase would be expected here.  The words used, " We this day enter you on contract," are equally consistent with either construction.  The clauses as to quantity, price and terms are consistent also with either construction.  So also the remaining clause of the contract, as given in the agreed statement, as to deliveries — " To be delivered in lots as wanted prior to April 1st, 1903," and the single word " Accepted " placed across the

face of the document over the defendant's signature.   Looking
at the written agreement alone as set out in the agreed state-
ment the judgment for the defendant was right, because the
language of the contract is so equivocal that it cannot be held
to establish the plaintiffs' case.

The agreed statement of facts contains no authority to the
court to draw inferences.   It states that the plaintiffs are whole-
sale druggists and that the defendant is a dealer in oils.   It re-
cites two letters and a telegram leading up to the making of the
agreement, the facts with reference to a similar agreement be-
tween the parties which had matured or expired on April 1,
1902, and also that the defendant had on hand at all times
a sufficient quantity of the oil, that the ten barrels were not
marked, separated or set aside from the general stock, and that
its value on and after April 1, 1903, was $100 per barrel.

In the first letter the defendant, after stating that the market
is firm and that there is every indication that prices will be
higher, writes : " We can offer you on contract, to be delivered
to you as wanted up to April 1, 1903, your requirements of . . .
oil, at $33 per barrel . . . and we will protect you against de-
cline in price.   We would strongly advise you to place your
order at once."   This letter was answered by a telegram, " Enter
contract ten barrels Norwegian oil as per your letter," and on
the same day the plaintiffs wrote confirming their telegram and
saying, " you to protect us against decline, the same [i. e., the
oil] to be taken between now and April 1st, 1903."

The most significant statement in the correspondence is that
clause of the plaintiffs' letter, saying " the same to be taken
between now and April 1st, 1903."   Standing alone this would
be decisive that the agreement was for an absolute sale.   But it
must be read with the offer in the defendant's letter " to be
delivered to you as wanted up to April 1st, 1903," and with the
terms of the final agreement, " To be delivered in lots as wanted
prior to April 1st, 1903," and with the fact that the plaintiffs
did no act toward taking the last three barrels of the oil until
some days after April 1, 1903.

The history of the transaction under the similar contract of
the previous year furnishes no clear guide to the intention of the
parties.   That contract was identical in form with the one now

under construction and was to expire on April 1, 1902. Before that date only a part of the quantity had been delivered. On April 10, 1902, the plaintiffs wrote: " Please ship us two barrels cod liver oil. We note that our contract expired April 1st. You may send us bill of the balance of the contract, and we would like to have you hold the goods subject to our order, or if you insist, you may send the whole of the goods now, but write us first." The most natural construction of this letter seems to be that the writer acknowledged that the contract was no longer binding; that he gave an absolute order for two barrels of oil, and suggested that the defendant should deal with the writer as though the contract were still open, while by implication the writer denied the right of the defendant to force acceptance of the oil covered by the contract and not called for before its expiration. Certainly it is not the letter of a party who acknowledges that he is bound to accept a certain quantity of goods at a certain price under a matured contract of sale. On receipt of the letter the defendant wrote enclosing bill of the two barrels which he shipped on the same day and saying, " This makes four barrels more due you on your contract, which we have invoiced to you, which we will hold subject to your order and your request." In this letter were separate bills of the two and the four barrels, on the latter of which bills were the words " Balance contract. To be shipped when ordered ", and the four barrels were shipped in the summer of 1902. The defendant's action upon this earlier contract was not an admission in terms that the contract was for an absolute sale. His letter when read with that of the plaintiffs is entirely explicable on the theory that in the then state of the market he was willing to sell the plaintiffs two barrels of oil for present delivery, and to set apart for them four more barrels for future delivery at the price named in a contract which had expired on April 1, 1902. Taking the whole statement as to this earlier transaction it has no decisive bearing.

On April 8, 1903, the plaintiffs having previously taken seven of the three barrels wrote to the defendant: " Please ship us balance of our contract for Norwegian C. L. Oil and oblige." To this the defendant replied on April 9 : " Replying to your favor of the 8th, would say that all our Norwegian cod liver oil

contracts expired April 1st, and we sold over a month ago all that would be left on hand at the expiration at that time, and so are unable to ship the remainder of your contract, namely, three barrels. Some of our contracts were made at a very low figure, and in the present condition of the Norwegian market we thought we were justified in taking advantage of it." On April 11, 1903, the plaintiffs wrote renewing their demand for the three barrels and saying " You know very well it was your duty to have notified us on April 1st or before April 1st that these goods were at your place subject to our order. Your contract says to be delivered in lots as wanted prior to April 1st. It was your duty to ship us the three barrels or notify us. The previous year you billed us the balance of the contract and held it subject to our order. Why did not you do it this year?" At about the same time in conversation with the defendant a representative of the plaintiffs said that he had been absent for a month, and that if he had been at home the lot would have been ordered earlier, as they were almost out of it. All of these transactions subsequent to April 1, 1903, do no more toward settling the true construction of the document of June 2, 1902, than to show that the plaintiffs contended that it meant a sale for future delivery, while the defendant treated it as a contract under which he was not bound to sell unless the plaintiffs called for the goods before a certain time.

The plaintiffs' declaration sets out the document of June 2, 1902, but with an additional term not shown in the agreed statement of facts, namely, " Conditions of sale. — If at the time of any delivery seller's price for the article sold shall be lower than the figure stipulated in this contract, buyer is to have benefit of decline to the extent of such difference on that delivery. Seller not liable for loss or detention of supplies through causes beyond control, or other unavoidable contingencies." The declaration alleges that by the contract the plaintiffs agreed to purchase of the defendant and the defendant agreed to sell to the plaintiffs ten barrels of oil. The defendant " for answer, says that the contract set forth in the plaintiffs' declaration was made."

We now cannot assume that the contract contained an additional term not shown by the agreed statement. But if that assumption should be made, the added term does not make it

certain that the agreement was for an absolute sale. The stipulation as to a decline in the seller's price becomes operative only upon an actual delivery under the contract, which delivery would work a sale *pro tanto* although the contract was not to be binding after a certain date; and the stipulation as to loss or detention of supplies through causes beyond control or other unavoidable contingencies would not be insensible in such a contract.

The burden of showing that they are entitled to recover is upon the plaintiffs, and we cannot see that they have sustained it by showing a contract of sale and purchase, or a breach of such a contract by the defendant.

*Judgment for the defendant affirmed.*